J. H. MYERS, APPELLANT, v. L. B. ADAMS AND
OTHERS, RESPONDENTS.

TRUST.—RESULTING TRUST.—FIDUCIARY RELATION.—Where a board
of education contracted with a contractor for the building of
a school-house and the contractor made a contract with a sub-
contractor for part of the work, and the course of dealing was
for board of education to pay the contractor for work as it.
was done, and thereupon the contractor paid his sub-contractor,
and the sub-contractor invariably deposited the money paid to
him in a certain bank of which the secretary of board of edu-
cation was cashier; *held*, that there was no fiduciary relation
of any kind existing between the bank and the holders of
checks drawn by the sub-contractor.

ID.—ID.—FUND.—A trust must be created either by contract of the
parties or by operation of law, and no resulting trust claimed
to be founded upon a fiduciary relation can arise where no
fiduciary relation exists.

ID.—ID.—STATEMENT OF CASE.—Where a sub-contractor received
payments upon contract from his contractor, who received
payments upon his contract from a board of education, whose
secretary was the cashier of a certain bank, wherein the sub-
contractor was in the habit of depositing payments made to
himself and of drawing checks against such deposits to pay
his laborers, and said sub-contractor upon receiving his last
payment deposited it in the bank, and issued checks against it,
which were assigned to plaintiff, but before said checks were
presented for payment the sub-contractor assigned his contract
and the money in the bank to the bank, and thereupon the bank
refused payment of the checks; *held*, that no trust existed or
arose by operation of law so as to make the deposit of the
sub-contractor a trust fund for the payment of the checks.

APPEAL from a judgment upon demurrer of the district
court of the first district, Hon. James A. Miner, judge.
The opinion states the facts.

*Mr. A. R. Heywood,* for the appellant.

*Messrs. Kimball and Allison* and *Messrs. Boreman and Boreman,* for the respondents.

SMITH, J.:

This is an action commenced by plaintiff, who is the assignee of the payees of certain checks issued by one John Hedderman, drawn on the defendant the Utah National Bank. The facts alleged in the complaint, in substance, are: That the defendant, the board of education of Ogden city, was, during the spring and summer of 1892, engaged in building a school building in Ogden city. That defendants Carr & Callahan were the original contractors for such building. That defendant Hedderman was a sub-contractor of the first degree under Carr & Callahan, and the assignors of plaintiff were workmen employed by Hedderman on the building. Defendant Adams was a member of the board of education, and was also cashier, manager, and a large stockholder in the Utah National Bank. It is then alleged that, under their contract, Carr & Callahan, from the beginning of their work, regularly, every two weeks, received an estimate from the architect in charge of the building for work done during the preceding two weeks; that the board of education paid 80 per cent. of this estimate to Carr & Callahan, and that they regularly paid to Hedderman 80 per cent. of the value of work done under his sub-contract during the preceding two weeks; that Hedderman, on receipt of this payment, each time deposited it in the Utah National Bank, and then drew checks on the bank to pay his employés the several amounts due them; that these checks were regularly paid on presentation; that this course of dealing continued from some time along in the spring of 1892 up to September 3, 1892, on which last-named date Hedderman deposited his money and drew checks, as usual, to the amount of $375.85 in the aggregate, being 12 checks in all; that all of these

checks were assigned to plaintiff, and also the claims of the several assignors for wages due; that plaintiff presented the checks at the bank for payment on the next business day; that defendant Adams, as cashier of the bank, refused to pay any part of the checks, and gave as a reason that Hedderman had assigned his contract to the bank, and the bank had appropriated the last money paid thereon as its own; that none of the checks or claims had been paid; that the assignment by Hedderman to the bank was without the knowledge of plaintiff and his assignors; that Hedderman was insolvent; that Carr & Callahan held in their possession the contract between them and Hedderman. The prayer is for an accounting between Carr & Callahan and Hedderman, and that the money paid into the bank by Hedderman be declared a trust fund for the payment of the checks assigned to plaintiff. The defendant the board of education appeared and demurred to this complaint for want of facts sufficient to constitute a cause of action; the defendants L. B. Adams and the Utah National Bank filed like demurrers; and, both demurrers being sustained, the action was dismissed as to the defendants who had demurred. The plaintiff appeals from this judgment of dismissal.

The only question is, does the complaint state sufficient facts to entitle the plaintiff to any relief against the board of education or L. B. Adams or the Utah National Bank? It was not seriously contended on the argument of this case that any relief could be had against the board of education, and a careful examination of the complaint leaves no doubt in our minds as to the correctness of the judgment dismissing it. As to defendants Adams and the Utah National Bank, it is claimed by the appellant:

1. That the assignment to the bank by Hedderman of his contract, and the money paid under it, is void because the cashier of the bank was a member of the board of

education. This contention cannot be sustained. There was no contract between the board of education and either Hedderman or his employés. The contract of Hedderman was with Carr & Callahan, and he owed no duty to the board of education or any member of it, and consequently it owed him none. They were entirely independent of each other; hence there was no impropriety in the bank, of which Adams was manager, dealing with Hedderman as it would have dealt with any stranger.

2. It is claimed by appellant that the money paid by Carr & Callahan to Hedderman was a trust fund, and that no matter whose hands it passed into, it was subject to the payment of the checks given to plaintiff's assignors. Is this a trust fund? It is fundamental that "trusts are created either by the contract of parties or by operation of law." 1 Perry, Trusts. § 82. It is not claimed that any contract of the parties here has been alleged which makes this a trust fund, or in any way sets it apart for the payment of these checks. A trust by operation of law arises only in a well-defined class of cases. Section 125 of Perry on Trusts defines these different classes, and the note to that section in the fourth edition in detail sets out all cases of resulting trusts. The section and note are lengthy, and we will not set them out in this opinion. Suffice it to say that the facts alleged in the complaint in this action are in no wise analogous to any case or condition suggested as creating a resulting trust. It is evident from the facts alleged that, when the board of education paid to Carr & Callahan the amount due under their estimate, the board had nothing further to do in the premises, and owed no further duty to any person, in connection with this money. Carr & Callahan could do as they pleased with the money. It was their own, and their obligation to pay Hedderman was a legal one, for which they were personally bound, but they held no money in trust to pay him. When Hedderman

received the money, the same was true of him as of Carr & Callahan,—the money was his, and he could do as he pleased with it. He paid it to the bank, instead of his employés. Whatever his moral duties were, he had a perfect legal right to dispose of the money as he pleased.

Our attention has been called by counsel for appellant to his claim that no lien is allowed by our statutes to laborers on public buildings such as this school-house. We fail to see what relation this has to the matter under consideration. If the workmen on a public building are denied a lien, then they simply have so much less protection on such buildings. The fact that this remedy is denied them cannot be claimed to give them some other and different one, outside of their contract of employment, and outside of the law. We find no error in the record, and the judgment is affirmed.

ZANE, C. J., and BARTCH, J., concurred.